.

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TINA SOSS, | ) | |
| | ) | CASE NO.   1:09-cv-03024 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
|   Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff Tina Soss ("Soss") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Soss's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, this Court VACATES and REMANDS the final decision of the Commissioner for further proceedings consistent with this opinion.

**I. Procedural History**

On February 29, 2006, Soss filed an application for POD, DIB, and SSI alleging a disability onset date of February 17, 2006, and claiming that she was disabled due to fibromyalgia. Her application was denied both initially and upon reconsideration. Soss timely requested an administrative hearing.

On October 10, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Soss, represented by counsel, testified. Barbara Burk testified as the vocational expert ("VE"). On January 15, 2009, the ALJ found Soss was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

**II. Evidence**

*Personal*

Born on April 10, 1972, and age thirty-six (36) at the time of her administrative hearing, Soss is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c).

*Hearing Testimony*

At the hearing, Soss testified to the following:

- Her treating physician, Dr. Foley, advised her to stop working due to her fibromyalgia. (Tr. 460-61.)

- She has received cortisone injections for a herniated disc. (Tr. 461.)

- She needs help with grocery shopping and even light duty chores around the house. (Tr. 461.) She has to lean against the counter while washing dishes and can vacuum with a "very light vacuum very little at a time." (Tr. 463.)

- She takes several pain medications, including Methadone, that do not cause any

      side effects. (Tr. 462.)

- She spends most of her day alternating between sitting and laying down. She can stand for roughly ten minutes at a time and walk for about five to ten minutes. She can sit no longer than an hour at a time. (Tr. 462.) She can lift five to eight pounds only. (Tr. 466.) She has difficulty reaching overhead due to pain and stiffness in her neck. (Tr. 469.)

- Approximately 2 out of 5 days when her pain is particularly bad, she has to lay down most of the day. (Tr. 463.)

- She does not take any medication for depression and is not receiving counseling. (Tr. 466.)

- Dr. Foley recommended that she perform stretching exercises and go for walks. She performs the leg stretching exercises every other day and tries to get outside to walk. (Tr. 467-68.) She normally walks for approximately 20 minutes. *Id*.

- She has not suffered a seizure in over a year, as medication has been effective. (Tr. 469-70.)

Soss has a high school education (Tr. 457) and past relevant work as a data entry clerk and a drill press operator. (Tr. 471.) While the data entry clerk was sedentary, the VE testified that the drill press work she performed at one job was at the medium exertional level, while at another job it was sedentary. (Tr. 471-72.) The ALJ posed the following hypothetical to the VE:

> The first one is, I would like you to consider an individual who's 36 years old and has a high school education. Has the vocational background of Ms. Soss. This individual would be limited to the light exertional level. By that I mean specifically they could lift and carry up to 20 pounds occasionally. Lift and carry 10 pounds frequently. They could stand and walk for six hours out of an eight hour day. They could sit for at least six hours out of an eight hour day. They could push or pull 20 pounds occasionally. And they could push or pull 10 pounds frequently. This individual could not climb ladders, ropes or scaffolds. And they'd be limited to frequent overhead reaching. They could not perform at unprotected heights or work with any hazardous machinery.

(Tr. 473.) The VE testified that such an individual could perform Soss's past relevant work as a data entry clerk, as well as the sedentary drill press operation. (Tr. 473.) In a second

3

hypothetical, the ALJ asked the VE to assume a person of the same age and vocational background with the following additional restrictions:

> But this individual could lift only eight pounds occasionally and five pounds frequently. They could stand and walk for two hours of the eight hour day. But they could only stand or walk in 20 minute increments. After that they would have to sit down for at least two minutes. This individual could only sit for two hours out of the eight hour day. They could sit at 30 minute increments and then they would have to stand for two minutes. This individual would only be able to push or pull eight pounds occasionally and push or pull five pounds frequently.

(Tr. 474.) The VE testified that such a person could neither perform Soss's past relevant work nor any other work in the national economy. (Tr. 474.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[1]

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when

---

[1] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Soss was insured on her alleged disability onset date, February 17, 2006 and remained insured through the date of the ALJ's decision, January 15, 2009. (Tr. 15.) Therefore, in order to be entitled to POD and DIB, Soss must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Soss established medically determinable, severe impairments due to fibromyalgia, degenerative disc disease, and seizure disorder. However, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Soss was found capable of performing her past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Soss is not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the

record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")

### VI. Analysis

Soss claims error because: (1) substantial evidence proves that Soss is disabled due to fibromyalgia; and, (2) the ALJ failed to grant appropriate weight to Soss's treating and examining physicians.

*Fibromyalgia*

In her brief, Soss argues the ALJ erred because "substantial evidence proves her disability." (Doc. No. 16 at 7.) Such an argument is not cognizable, as Soss evokes an incorrect

standard of review. An ALJ's decision will be affirmed if it is supported by substantial evidence. It is immaterial if substantial evidence also supports a contrary position. *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence supports claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion). The substantial evidence standard "presupposes that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545. Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports her position and contradicts the finding of the ALJ.

Soss does argue, however, that the ALJ's analysis of her fibromyalgia was improper. (Doc. No. 16 at 11.) It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). When a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms. First, the ALJ must determine if there is an underlying medically determinable physical or

7

mental impairment. Second, the ALJ "must evaluate the intensity, persistence, and limiting effects of the symptoms." SSR 96-7p. Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition, and (2) whether the objective medical evidence confirms the alleged severity of pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

As to the first portion of the pain analysis, there is no dispute the ALJ accepted that Soss suffered from fibromyalgia, a severe impairment, and also that Soss's impairments could reasonably be expected to produce the alleged symptoms – namely pain. (Tr. 19-21.) Although the ALJ observed that David Demangone, M.D., diagnosed Soss with fibromyalgia without noting any pain trigger points and also that Terence Foley, M.D., did not mention fibromyalgia in a February 2006 visit, these implicit critiques are immaterial as the ALJ ultimately found Soss did suffer from fibromyalgia. *Id*. The ALJ found, however, that there were few objective findings to support Soss's subjective complaints, and he, therefore, proceeded to a credibility analysis. As explained by other courts, it is difficult to find corroborative medical evidence in fibromyalgia cases.

> Fibromyalgia, also referred to as fibrositis, is a medical condition marked by "chronic diffuse widespread aching and stiffness of muscles and soft tissues." *Stedman's Medical Dictionary for the Health Professions and Nursing* at 541 (5th ed. 2005). We note also that ours is not the only circuit to recognize the medical diagnosis of fibromyalgia as well as the difficulties associated with this diagnosis and the treatment for this condition. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that fibromyalgia's "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective");

8

> *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (noting that "a growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease") (internal quotation marks and citations omitted); *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004) ("'Because proving the disease is difficult . . ., fibromyalgia presents a conundrum for insurers and courts evaluating disability claims.'") (*quoting Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1067 (9th Cir. 1999)).

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3. (6th Cir. 2007); *see also Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 915 (3rd Cir. 2003). Therefore, objective medical evidence corroborating allegations of pain will most likely be nonexistent, resulting in even greater emphasis on the credibility of a claimant's subjective allegations of the severity of her pain.

The ALJ found that Soss's pain symptoms are not as limiting as she alleged. (Tr. 22.) The ALJ also found that the limitations Soss reported to her doctors were inconsistent with those she claimed in her hearing testimony. *Id*. In his opinion, the ALJ specifically cites treatment records that indicate Soss could "get up and go" while on medication and that she was able to perform activities of daily living and work around the home. (Tr. 21, *citing* Tr. 144-46, 158-59, 169, 179-80, 183-88, 256-57, 263.) Credibility determinations regarding a claimant's subjective complaints rest with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly. *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). Nonetheless, "[t]he determination or decision must contain specific reasons for

the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individuals statements and the reason for the weight." SSR 96-7p, Purpose section; *see also Felisky,* 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so"); *Cross*, 373 F. Supp. 2d at 733 (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")  The Court finds that the ALJ's analysis is sufficient under the aforementioned standards, as the finding is both clear and supported by evidence in the record.

Though Soss argues that the ALJ erred by equating the ability to perform some activities of daily living with the ability to sustain full time employment, her argument misconstrues the ALJ's analysis.  The ALJ noted the inconsistencies between what Soss told her physicians and what she testified to at the hearing.  By finding her allegations as to the level of her pain less than credible, the ALJ essentially found that Soss failed to satisfy the second step of the *Duncan* pain analysis test.[2]  Although Soss appears to believe that the fibromyalgia diagnosis of her treating physicians rendered her complaints as to the level of her pain trustworthy, "the mere diagnosis of fibromyalgia is insufficient to render a claimant's complaints of disabling pain credible."  *Vlaiku v. Astrue*, 2008 U.S. Dist. LEXIS 64442 (N.D. Ohio Aug. 4, 2008) (*citing Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967); *Brazier v. Sec'y of Health & Human Servs.*, 61 F.3d 903 (6th Cir. 1995)).

---

[2] The ALJ's finding that Soss could perform a limited range of light work is supported by the Physical Residual Functional Capacity Assessment performed by Paul Morton, M.D. (Tr. 21, 287, 296-303.)

For the foregoing reasons, Soss's first assignment of error is without merit.

*Treating Physicians*

In her second assignment of error, Soss argues that the ALJ failed to accord proper weight to her treating and examining physicians. Specifically, Soss claims that the ALJ failed to set forth good reasons for rejecting the limitations set forth in two physical RFC evaluations she attributes to Dr. Foley. Though Soss also asserts that the ALJ failed to accord proper weight to the opinion of Dr. Demangone, she fails to cite a specific opinion that the ALJ rejected. A review of the ALJ's decision does not indicate on its face that any portion of Dr. Demangone's finding was rejected. As such, the Court shall only consider Soss's argument with respect to Dr. Foley.[3]

Under Social Security regulations, the opinion of a treating physician is entitled to controlling weight if such opinion (1) "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "is not inconsistent with the other substantial evidence in [the] case record." *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)). "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 F. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.) Furthermore,

---

[3] Dr. Foley, a rheumatologist, had treated Soss for an arthritic condition since November 10, 2003. (Tr. 447.) He saw Soss several times each year between 2004 and 2008. (Tr. 128, 140, 171-72, 207-14, 283-311, 368-90.)

11

"[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Blakley*, 581 F.3d at 408.[4]

The opinion of a treating physician must also be based on sufficient medical data, and upon detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Blakley*, 581 F.3d at 406 ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* SSR 96-2p).

The ALJ considered the physical RFC attributed to Dr. Foley, but declined to give it the weight normally accorded to treating physicians. He noted as follows:

> As for the opinion evidence, a [RFC] evaluation was completed on September 15, 2003 [Tr. 138-39]. This form limits claimant to lifting 5 to 8 pounds maximum, sitting only 30 minutes at a time or a total of 2 hours in an 8 hour day. Although this form came from Dr. Foley's office, it was not signed or completed by Dr. Foley. It was signed by George Dragoner, PA-C, for Dr. Foley. This report is therefore not given the same weight and value as that completed by a doctor. In addition, the objective medical evidence does not support the limits noted.

(Tr. 22.)

Apparently, the main reason the ALJ did not treat the RFC evaluation as one from a treating physician is because the form was not signed by Dr. Foley himself, but rather by a

---

[4] Pursuant to 20 C.F.R. § 404.1527(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

12

physician's assistant on Dr. Foley's behalf. The Court finds this an unreasonable basis for rejecting a treating physician's opinion. Under similar circumstances, a recent decision from the federal District Court of Oregon found that remand was necessary. *See Day v. Comm'r of Soc. Sec.*, 2009 U.S. Dist. LEXIS 124094, 149 Soc. Sec. Rep. Service 104 (D. Or., Dec. 15, 2009). In *Day*, an ALJ had rejected a treating physician's RFC evaluation, which was based in part on a diagnosis of fibromyalgia, because it was "not supported by 'findings on examination'" and because it was not signed by the physician. *Id.* at \*\*33-34. The Court found that "the ALJ did not provide legally sufficient reasons for rejecting the opinions of these treating physicians as to plaintiff's impairments and their effects on his residual functional capacity." *Id.* at \*35. The Court further noted that "if the ALJ had serious questions about whether Dr. Linster, [the treating physician], had filled out the unsigned fibromyalgia questionnaire, he could have easily clarified that issue by contacting that treating physician." *Id.* at \*37. This Court finds the *Day* decision's analysis persuasive. Here, the ALJ conceded that the form came from Dr. Foley's office. The form was not unsigned, but rather signed by the physician's assistant "for Dr. Foley." (Tr. 139.) The ALJ seemed to conclude that the RFC evaluation was the independent opinion of a physician's assistant rather than of Dr. Foley. If that was the case, the physician's assistant would more likely simply affix his signature with nothing more. Also, as noted in *Day*, the ALJ could easily have contacted Dr. Foley's office to allay any doubts about the source of the RFC evaluation. *Cf. Whitney v. Astrue*, 2010 U.S. Dist. LEXIS 76485 at \*\*9-10 (W.D.N.Y. July 29, 2010) (finding that "[t]he ALJ's failure to attempt to acquire actual opinions from [a treating physician] regarding the Plaintiff's limitations is grounds for a remand" where "[t]here is no evidence that the ALJ attempted to re-contact the treating physician despite receiving an

13

insufficient response.")

Furthermore, as noted above, the ALJ's alternate reason for rejecting Dr. Foley's RFC – a perfunctory statement regarding the lack of corroborating objective medical evidence – is unreasonable as well. *See, e.g., Green- Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (noting that "a growing number of courts . . . have recognized that fibromyalgia is a disabling impairment and that there are no objective tests which can conclusively confirm the disease"); *accord Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 n. 3. (6th Cir. 2007).

The ALJ's basis for rejecting the opinion attributed to Dr. Foley concerning Soss's functional limitations was legally insufficient. Although Soss requests that this Court reverse the ALJ's decision and issue an award of benefits, the Court declines to do so. The Court does not find that the ALJ was compelled to accept the opinion of Dr. Foley, but rather that the ALJ did not set forth good reasons for doing so.

## VII.  Decision

For the foregoing reasons, the Court finds the decision of the Commissioner failed to comply with the Social Security Administration's procedural regulations. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Greg White
U.S. Magistrate Judge

Date: September 16, 2010